## ROCK BIT INTERNATIONAL, INC., Plaintiff,

v.

## SMITH INTERNATIONAL, INC., Defendant.

## No. CA 97–1017.

United States District Court, S.D. Texas, Houston Division.

Nov. 30, 1999.

Jerry W. Gunn, Law Offices of Jerry W. Gunn, Houston, TX, William C. Slusser, Slusser & Frost, L.L.P., Houston, TX, for plaintiff.

Thomas R. McDade, William P. Maines, McDade, Fogler, Maines & Lohse, L.L.P., Houston, TX, Jeffrey W. Tayon, Leslie V. Payne, Conley, Rose & Tayon, P.C., Houston, TX, for defendant.

## ORDER GRANTING ATTORNEY FEES

HOYT, District Judge.

Having considered Smith International, Inc.'s ("Smith's") motion for attorney fees and Rock Bit International, Inc.'s ("RBI'S") response and related submissions, IT IS HEREBY ORDERED THAT:

1. Smith's Motion be and the same is GRANTED;

2. RBI shall pay Smith Two Million, five hundred eighty thousand three hundred eight dollars and fifty-seven cents ($2,580,308.57) in attorney fees;

3. In support of this award, the Court finds that this case is exceptional under 35 U.S.C. § 285 because of RBI's vexatious and abusive litigation tactics before the Court and the Patent Office. RBI engaged in vexatious litigation for one or more of the reasons detailed below.

4. RBI filed this suit knowing that RBI's U.S. Patent No. 5,145,016 ("'016 patent") was invalid and continued this lawsuit knowing the patent was invalid. Before RBI filed suit against Smith and during the course of the lawsuit, RBI knew that:

a. Smith had sold Smith's F27 type drill bits having the precise design disclosed in RBI's patent before RBI's first "critical date." RBI learned this fact at a meeting held between representatives of each company in the fall of 1992— only weeks after RBI's original '016 patent issued. Despite receiving an annotated drawing of one of Smith's F27 type bits—sold by Smith before RBI's first "critical date"—RBI refused to address the invalidity of its patent and instead filed suit against Smith. The Court has concluded that Smith's "pre-critical date" sales of the F27 type bits invalidate RBI's patent under 35 U.S.C. § 102(b) and § 103.

b. When RBI's CEO (Mr. Gearhart) was shown one of Smith's "prior art" F27 bits during his deposition, he admitted that the bit had all of the features of RBI's patent. Despite this admission of invalidity, RBI continued to pursue this lawsuit.

c. When RBI's technical expert (Mr. Sweet) was shown photographs and drawings related to Smith's "prior art" 2JS bit which was sold before RBI's first "critical date," RBI's expert admit-

ted that this bit had all the features of claim 11 of RBI's patent. Despite another admission of invalidity, RBI continued this lawsuit.

d. RBI withheld important evidence regarding Smith's "prior art" bits and made false statements to the Patent Office during the reexamination proceedings involving RBI's '016 patent. For example, when filing two petitions for reexamination at the Patent Office. RBI failed to submit the annotated Smith drawing of the F27 bit which it had received from Smith in November of 1992, months before the petitions were filed. In addition, RBI falsely told the Patent Office that the secondary gage inserts in Smith's "prior art" F4A type bits did not extend to substantially gage diameter as required by RBI's patent claims. These gage inserts are similar to the gage inserts used in Smith's "prior art" F27 type bits. At the same time, both RBI's inventor and patent counsel admitted in their depositions that when they made this affirmative representation to the Patent Office, they did not know whether or not that statement was true. The evidence shows the statement to have been false. In addition, RBI's inventor admitted that he could think of no reason for anyone to use protruding gage inserts like those shown in Smith's F4A bits if they did not extend to substantially gage diameter as required by RBI's patent claims. Further, the Examiner relied on RBI's false statement when issuing the '016 reexamination patent because he stated incorrectly in his reasons for allowance that the Smith prior art bits did not use gage inserts extending to substantially gage diameter. As such, the Examiner was misled into issuing the reexamination patent based on RBI's false statements.

e. RBI requested an improper patent claim construction by the Court, arguing that RBI's patent claims should not be construed to cover the very bit designs disclosed in RBI's patent. When RBI finally conceded on the eve of trial that RBI's patent claims must be construed to include the bit designs disclosed in RBI's patent, summary judgment based on Smith's "pre-critical date" sales of Smith's F27 bits was clearly appropriate.

f. Despite knowing the significance of Smith's invalidity evidence concerning Smith's "prior art" bits, RBI refused to discuss the invalidity evidence with Smith during discussions between the Companies, verbally and in writing, before suit was filed. RBI's conscious disregard for this evidence is proof of RBI's bad faith in bringing this lawsuit. If a reasonable company had objectively addressed the clear invalidity evidence provided by Smith before suit was filed—some of the very evidence tendered to this Court—this suit would not have been filed.

5. Additionally, during the course of this case, RBI unnecessarily increased the costs associated with the defense of this case by taking extreme and unjustified positions, such as the following:

a. RBI filed this suit in Beaumont, knowing that neither RBI (a Fort Worth company) nor Smith (a Houston-based company) had any significant contacts with Beaumont. Recognizing that RBI was forum shopping, the Beaumont court ordered the case transferred to Houston on Smith's Motion.

b. RBI refused to answer basic interrogatories and produce documents, requiring this Court's order granting Smith's motion to compel.

c. RBI sought documents from Smith relating to unrelated old lawsuits, requiring this Court's entry of a protective order on motion by Smith.

d. RBI sought to compel privileged and irrelevant documents, requiring this Court's order denying RBI's motion to compel.

e. RBI frivolously claimed that certain Smith drill bit designs infringed its patent knowing that there could be no infringement because RBI had dis-

claimed those features at the Patent Office.

f. RBI maintained a frivolous lost profits damages theory knowing that it was unsupportable under the law and facts and then suddenly withdrew that theory two weeks after this case was set for docket call.

g. RBI committed numerous violations with its expert witnesses, including a failure to comply with Rule 26's strict requirements regarding expert reports.

6. RBI also made a number of false statements in connection with the original prosecution of RBI's '016 patent. For example, in November of 1991, RBI falsely told the Patent Office that RBI's design in issue had been widely accepted by the drilling industry. However, by the end of 1991, RBI had only sold about 70 bits including the '016 design out of more than 150,000 bits purchased by the drilling industry during that same time frame. In addition, RBI told the Patent Office that RBI's bits using the '016 design performed better than certain prior art bits known to RBI and illustrated in Figure 5 of RBI's patent. Yet, RBI has never made any comparison of those bits, either at that time, or since then, to determine which bits perform better. Also of significance, during the '016 original prosecutions, RBI failed to disclose to the Patent Office its own "pre-critical date" invalidating sales and offers for sale.

7. RBI's entire approach to this case has been an attempt to enforce a patent RBI knew to be invalid. Absent an award of attorney fees, RBI's only risk was that its invalid patent might be declared invalid. Accordingly, because of the exceptional nature of this case and to make Smith whole, an award of attorney fees is appropriate.

8. Based on the submissions by Smith and taking into account the nature of this case and the issues presented, the time and labor required, the alleged damages involved, the result obtained, the experience, reputation and ability of the Defendant's attorneys, the usual fee charged for similar services by other attorneys in this area, and the amount of attorney fee awards in similar cases, the Court finds that attorney fees in the amount of Two Million, five hundred eighty thousand three hundred eight dollars and fifty-seven cents ($2,580,308.57) is reasonable, necessary and appropriate under these circumstances.